IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NORWIN SCHOOL BUS DRIVERS )
ASSOCIATION, et al., )
        Plaintiffs, )
)
vs ) Civil Action No. 16-666
)
FIRST STUDENT, INC., et al., )
        Defendants. )

MEMORANDUM OPINION AND ORDER

Presently before the Court are cross-motions for summary judgment, filed by Plaintiffs, Norwin School Bus Drivers Association (NSBDA) and Dan Chellini, and Defendants, First Student, Inc. (First Student) and Teresa Cole. For the reasons that follow, Plaintiffs' motion will be denied, Defendants' motion will be granted in part and denied in part and the matter will be remanded to the arbitrator for resolution of the ambiguity identified herein.

Plaintiffs bring this action arising out of an incident in which Dan Chellini was terminated from his employment as a bus driver with First Student when he was unable to complete a urine test and he did not remain at the testing site for the required amount of time because he had to attend an important doctor's appointment. Chellini's union, NSBDA filed a grievance on his behalf, which resulted in an arbitration award in Chellini's favor ("the Award"). However, a disagreement arose between the parties about whether the Award required Chellini to undergo any drug and alcohol testing. The parties entered into a Memorandum of Agreement, pursuant to which Chellini agreed to submit to a drug test before returning to work, and he subsequently took and passed two drug tests. But then First Student informed Chellini that, pursuant to regulations promulgated by the United States Department of Transportation (DOT), he could not be returned to a "safety-sensitive position" such as driving a bus unless he received

an evaluation from a Substance Abuse Professional (SAP). Chellini has refused to meet with a SAP because he contends that he never tested positive on a drug test and because meeting with a SAP was not required by the terms of the Award or the Memorandum of Agreement.

Plaintiffs bring this action to enforce the Award, at least insofar as they read it to exclude any requirement that Chellini submit to a drug evaluation before being reinstated to his position as a bus driver. Defendants maintain that the Award incorporates the DOT regulations and therefore the SAP evaluation requirement or, if it does not, that it violates public policy, that it is in manifest disregard of the law and that the arbitrator exceeded his authority in entering it.

In the pending motions, Defendants seek to vacate the Award to the extent that it is read as Plaintiffs contend, that is, to relieve Chellini of the DOT regulation requiring him to undergo an evaluation with a SAP before being reinstated to a safety-sensitive position. Plaintiffs seek to have the Award enforced, with the understanding that Chellini is not required to meet with a SAP. For the reasons that follow, the Court concludes that the Award contains a latent ambiguity about whether Chellini must submit to a SAP evaluation prior to being reinstated as a bus driver and that this ambiguity should be resolved by the arbitrator upon remand. In addition, as Defendants argue, Teresa Cole has no personal liability and therefore Defendants' motion for summary judgment should be granted insofar as it seeks to dismiss her from the case.

Facts

First Student is a corporation which contracts with school systems nationwide to provide student transportation. Teresa Cole is a safety person employed by First America, the parent company of First Student, as the Company Director of Safety for the East. Dan Chellini is an employee of First Student and worked as a bus driver out of its location at 99 Billott Avenue, North Huntingdon, Pennsylvania. He is a member of NSBDA, an unincorporated union. (Joint

Stipulation of Facts ¶¶ 1-4.)[1]

Mobile Occupational Medical Services ("MOMS") is an occupational health services and medical solutions company that provides various occupational medicine procedures for its clients. Justin Haws is employed by MOMS and was responsible for the collection of the urine samples required for First Student's randomized drug test on October 21, 2015. First Student has implemented a Controlled Substance Drug and Alcohol Policy which requires its employees in safety-sensitive positions, including bus drivers, to submit to randomized alcohol and drug tests as mandated by the DOT. (Id. ¶¶ 5-7.)

On October 21, 2015, Chellini was selected for a randomized drug and alcohol test. In accordance with First Student's policy, a swab of his tongue was required for the alcohol test and a urine sample was required for the drug test. Chellini had previously had prostate cancer and received treatment for a number of months. He claims to have been experiencing back pain and that a doctor ordered an MRI of his back to determine if the cancer had spread to his spinal column. When he was advised by his manager that he was selected for a random drug test, Chellini advised the manager that he had a doctor's appointment at 10:00 a.m. for his cancer. He complied with the alcohol portion of the test, but was unable to provide the required amount of urine for the drug test. According to First Student's policy, an employee must produce at least 45 ml. of urine. If the employee is unable to produce the required amount and leaves the testing site without producing this amount, the drug test will be counted as a refusal to test, which equals a failed drug test. (Id. ¶¶ 8-12.)

Haws informed Chellini that if he were to leave the testing site without providing an adequate urine sample, the test would be terminated and marked as a refusal. Despite Haws'

---

[1] ECF No. 11.

notice, Chellini informed Haws that he could not spend any additional time at the testing site waiting to produce the required urine sample amount because he had a doctor's appointment and did not want to be late. He then left the testing site and went to his doctor without providing an adequate urine sample per MOMS protocol. After Chellini left the testing site, Haws submitted the Federal Drug Testing Custody and Control Form ("CCF") to the Medical Review Officer, specifically noting that Chellini left the facility without providing an adequate urine sample. His test was marked as a refusal and First Student treated him as having refused the drug test. The Medical Review Officer determined that there was a refusal to test and, per the policy, the test was considered to be positive. (Id. ¶¶ 13-15.)

On November 3, 2015, First Student was notified that the NSBDA and Chellini would be filing a grievance in an attempt to protect his employment. On November 11, 2015, Chellini was removed from his position as a bus driver and placed on administrative leave per company policy for a positive drug test. On November 12, 2015, Chellini's employment with First Student was terminated. (Id. ¶¶ 16-19.)

NSBDA filed a grievance on Chellini's behalf. The grievance was processed in accordance with the procedures set forth in the parties' collective bargaining agreement (CBA), but the dispute went unresolved. NSBDA appealed the grievance to arbitration. Christopher Miles was selected through the Federal Mediation and Conciliation Service to hear the dispute. A hearing was conducted on February 17, 2016, at which the parties were afforded the full opportunity to present testimony and evidence, to cross-examine the witnesses, and to provide arguments of their respective positions. First Student knew of the Federal Regulations and attempted to use the applicable regulations in the arbitration. On March 7, 2016, the parties submitted and exchanged post-hearing briefs, and the record in the dispute was closed. (Id.

¶¶ 20-24.)

An Award dated April 12, 2016 was signed by Mr. Miles and sustained the grievance on behalf of Chellini. The Award stated that:

> Based upon the particular circumstances surrounding this case, it is found that the Company did not have just cause as required by the Agreement to terminate the Grievant's employment for leaving the drug testing site prior to completion of the test on October 21, 2015 to attend a doctor's appointment to find out if his prostate cancer may have spread to his spine. The Grievant shall be reinstated to his position and made whole for all related losses.

(Id. ¶ 25 & Ex. 1.)

A disagreement arose between the parties as to whether the Award required Chellini to undergo any drug and alcohol testing prior to being reinstated. On May 3, 2016, First Student, NSBDA and Chellini entered into a Memorandum of Agreement for full and final resolution of any and all issues raised by or related to Chellini's discharge. The Memorandum of Agreement stated, inter alia, that:

> Grievant must first submit to Drug and Alcohol Testing ("Return to Work Test") in accordance with the Company's Controlled Substance Drug and Alcohol Policy ("Policy"), within two (2) business days of following execution of this Agreement. The Company will immediately notify Grievant of the test results. If the test results are negative, Grievant will be reinstated without loss of seniority to his former position. Grievant must report to work within two (2) business days after notification and he will be assigned in accordance with the terms of the CBA. If the test results are not negative, Grievant will be considered to have voluntarily resigned his employment as of the date of the Return to Work Test; should Grievant voluntarily resign in accordance with the foregoing, Grievant will nonetheless be paid those monies identified … below;
>
> At the discretion of the Company, Grievant will submit to one (1) additional Drug and Alcohol test within twenty (20) day period following reinstatement and he will submit to two (2) additional Drug and Alcohol tests within a thirty (30) day period beginning on the first work day of the 2016-2017 school year; these tests are separate and distinct from any other Drug and Alcohol tests that may be directed by the Company in accordance with its Policy.

(Id. ¶¶ 26-27 & Ex. 2 ¶ 3(a, b).)

5

Pursuant to the Memorandum of Agreement, Chellini provided a urine sample for the drug test and the result was returned as negative. He has taken and passed two drug tests. On May 20, 2016, First Student informed Chellini that any employee who has tested positive on a random drug test is not permitted to return to a DOT safety-sensitive position until he receives an evaluation by a SAP. Chellini refuses to meet with a SAP because he contends that he did not test positive on a drug test and because meeting with a SAP was not required by the Award or the Memorandum of Agreement. Chellini was directed to report to work by May 23, 2016 to be reinstated and assigned a non safety-sensitive work assignment in accordance with the CBA. (Id. ¶¶ 28-31.)

Procedural History

Plaintiffs filed this action in the Court of Common Pleas of Westmoreland County on May 20, 2016. Count I alleges generally that Defendants have failed to comply with the terms of the Award because they have not reinstated Chellini. Count II seeks punitive damages.

On May 24, 2016, Defendants removed the action to this Court on the basis of federal question jurisdiction, specifically Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (LMRA), which preempts any state law cause of action for the violation of a CBA, including breaches thereof. (Notice of Removal ¶ 5.)[2] In addition, Defendants contend that the Award potentially conflicts with their responsibility to comply with the Federal Motor Carrier Act of 1980, 49 U.S.C. § 14501(c)(1) and the implementing regulations issued by the DOT, which also preempt conflicting state laws. They also state that the Court has supplemental jurisdiction over any remaining claims in the case because they are so related to the LMRA claims over which the Court has original jurisdiction that they form part of the same case or

---

[2] ECF No. 1.

controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

On July 22, 2016, the parties filed a Joint Stipulation of Facts (ECF No. 11), which forms the basis for their cross-motions for summary judgment. On August 1, 2016, Defendants filed a motion for summary judgment (ECF No. 12) and on August 5, 2016, Plaintiffs filed a cross-motion for summary judgment (ECF No. 15). On August 22, 2016, Defendants filed a response to Plaintiffs' motion (ECF No. 17). Although Plaintiffs' response to Defendants' motion was also due on August 22, 2016, to date they have not filed any response.

Summary Judgment Standard of Review

As amended effective December 1, 2010, the Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's

7

favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Plaintiffs argue that the Award does not require Chellini to submit to a SAP evaluation prior to being reinstated as a bus driver and they request that it be enforced with this understanding. Defendants argue that: (1) the Award and the Memorandum of Agreement are silent about the issue of whether Chellini would have to undergo an evaluation by a SAP but under the DOT regulations, Chellini's act of leaving the testing site constituted a refusal to submit to the test, which was a violation of the regulations and therefore, prior to being reinstated to a safety-sensitive position, he must undergo a SAP evaluation; (2) to the extent that the Award excuses Chellini's compliance with federal regulations, it should be vacated as exceeding the arbitrator's powers under the CBA; (3) Plaintiffs are encouraging an interpretation of the Award that waives compliance with federal regulations and the arbitrator lacks the authority to take this action; (4) to the extent that the Award would conflict with DOT regulations, it would violate public policy and should be vacated on that basis also; and (5) Teresa Cole has no personal liability and should be dismissed from the case.

Relevant DOT Regulations

The DOT regulations relating to drug testing are located in Part 40 of Title 49 of the Code of Federal Regulations. Defendants state that the regulations provide in relevant part as follows:

> **§ 40.191 What is a refusal to take a DOT drug test, and what are the consequences?**
> (a) As an employee, you have refused to take a drug test if you: . . .
> (2) Fail to remain at the testing site until the testing process is complete; or
> (3) Fail to provide a urine specimen for any drug test required by this part or DOT agency regulations….
> (c) As an employee, if you refuse to take a drug test, you incur the consequences specified under DOT agency regulations for a violation of those DOT agency

8

regulations.

**§ 40.193 What happens when an employee does not provide a sufficient amount of urine for a drug test?**
(a) This section prescribes procedures for situations in which an employee does not provide a sufficient amount of urine to permit a drug test (*i.e.*, 45 ml of urine).
(b) As the collector, you must do the following: . . .
(2) Urge the employee to drink up to 40 ounces of fluid, distributed reasonably through a period of up to three hours, or until the individual has provided a sufficient urine specimen, whichever occurs first. It is not a refusal to test if the employee refuses to drink. Document on the Remarks line of the CCF (Step 2), and inform the employee of, the time at which the three hour period begins and ends.
(3) If the employee refuses to make the attempt to provide a new urine specimen or leaves the collection site before the collection process is complete, you must discontinue the collection, note the fact on the "Remarks" line of the CCF (Step 2), and immediately notify the [Designated Employer Representative]. This is a refusal to test.

**§ 40.285 When is a SAP evaluation required?**
(a) As an employee, when you have violated DOT drug and alcohol regulations, you cannot again perform any DOT safety-sensitive duties for any employer until and unless you complete the SAP evaluation, referral, and education/treatment process set forth in this subpart and in applicable DOT agency regulations. The first step in this process is a SAP evaluation.
(b) For purposes of this subpart … a refusal to test (including by adulterating or substituting a urine specimen) … constitutes a DOT drug and alcohol regulation violation.

**§ 40.305 How does the return-to-duty process conclude?**
(a) As the employer, if you decide that you want to permit the employee to return to the performance of safety-sensitive functions, you must ensure that the employee takes a return-to-duty test. This test cannot occur until after the SAP has determined that the employee has successfully complied with prescribed education and/or treatment….
(b) As an employer, you must not return an employee to safety-sensitive duties until the employee meets the conditions of paragraph (a) of this section.[3]

Thus, Defendants contend that the combined effect of these provisions is as follows: (1)

---

[3] The Award also cited a Federal Motor Carriers Safety Administration regulation stating that "No driver shall refuse to submit to … a random alcohol or controlled substances test required under § 382.305…. No employer shall permit a driver who refuses to submit to such tests to perform or continue to perform safety-sensitive functions." 49 C.F.R. § 382.211. (ECF No. 11 Ex. 1 at 8.)

Chellini's failure to provide a sufficient amount of urine at the test on October 21, 2015 and his failure to remain at the testing site for three hours (even if for completely understandable and sympathetic reasons) constituted a refusal to test; (2) Haws appropriately marked Chellini as having refused to test and passed this information along; (3) because Chellini violated drug and alcohol DOT regulations, First Student was required to have him submit to a SAP and a return-to-duty test before he could be returned to a safety-sensitive position; and (4) Chellini's refusal to meet the requirement of undergoing a SAP evaluation precluded First Student from allowing him to return to a safety-sensitive position as a bus driver.

Plaintiffs do not contend that Defendants have misquoted the regulations. However, they argue that:

> This is not a case where the DOT regulations apply to the Plaintiff, Chellini. Chellini did not refuse to take a drug test. First Student is attempting to treat Chellini as though he refused a drug test, when in fact he did not. Chellini has taken and passed two (2) drug tests after the Arbitrator's Award was decided.
>
> The Arbitrator's decision is part of the law and facts of this case. The Arbitrator found that Chellini did not "refuse" the drug test in the ordinary sense of the word. He was simply unable to give enough of the urine sample on the day of the random test. Those facts have been established in the Arbitrator's Award and should be applicable to the Court's decision.

(ECF No. 16 at 1.)

It is true that Chellini did not "refuse" to take a drug test "in the ordinary sense of the word" as Plaintiffs contend, but they have not explained why the ordinary sense of the word would apply in a situation in which the procedures being followed are those described in federal regulations, which contain specific definitions. Rather, the DOT regulations provide that inability to produce a sufficient amount of urine and leaving the test site before the test is completed are deemed as a refusal. Even the arbitrator acknowledged that Chellini had engaged in a "constructive" refusal, although he concluded that the situation did not warrant Chellini's

10

termination.

On the other hand, Defendants' motion encounters a number of difficulties. First, they contend that the Award, which is silent on the matter, must be read as including the DOT regulations (specifically the SAP evaluation requirement), but they cite no authority in support of this position.[4] Second, Defendants entered into the Memorandum of Agreement which made no mention of the SAP evaluation—indeed, the agreement could be said to conflict with the regulations in that First Student appeared to be prepared to take Chellini back as a bus driver after he passed a return-to-work test <u>without</u> a SAP evaluation taking place prior thereto. Third, Defendants never challenged the Award; Plaintiffs brought this action seeking to enforce the Award after First Student announced that Chellini would not be reinstated as a bus driver (as the Award and Memorandum of Agreement had specified) until after he submitted to a new condition, namely the SAP evaluation. Defendants have not explained how they can seek to vacate an arbitration award that they accepted and never brought suit to challenge.

Enforcement of Arbitration Awards

As the Supreme Court has repeatedly held:

> Judicial review of a labor-arbitration decision pursuant to such a [collective bargaining] agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. [United] Paperworkers [Int'l Union] v. Misco, Inc., 484 U.S. 29, 36 (1987). We recently reiterated that if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting Misco, supra, at 38, 108 S.Ct. 364). It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispense[s]

---

[4] Defendants propose an analogy that Chellini would not be permitted to return to work as a bus driver if he did not maintain his driver's license, but that situation would be premised on a new event (Chellini's hypothetical loss of his driver's license), not an additional requirement precluding him from being reinstated as a bus driver following his "refusal" to take a drug test.

his own brand of industrial justice" that his decision may be unenforceable. Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award. Misco, 484 U.S., at 39, 108 S.Ct. 364.

Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).

"As a general rule, once an arbitration panel renders a decision regarding the issues submitted, it becomes functus officio and lacks any power to reexamine that decision." Colonial Penn Ins. Co. v. Omaha Indemnity Co., 943 F.2d 327, 331 (3d Cir. 1991) (citations omitted)). In Colonial Penn, the Court of Appeals described the three exceptions to the functus officio doctrine as follows:

> 1) An arbitrator can "correct a mistake which is apparent on the face of his award,"; 2) "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination,"; and 3) "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify."

Id. at 332 (quoting La Vale Plaza Inc. v. R. S. Noonan, Inc., 378 F.2d 569, 573 (3d Cir. 1967) (other citations omitted). This case does not concern a mistake or a failure to adjudicate an issue that was submitted, but it does present an ambiguity. As the court in Colonial Penn observed:

> when the remedy awarded by the arbitrators is ambiguous, a remand for clarification of the intended meaning of an arbitration award is appropriate. As we said in [a previous case], "[a] district court itself should not clarify an ambiguous arbitration award but should remand it to the arbitration panel for clarification." Such a remand avoids the court's misinterpretation of the award and is therefore more likely to give the parties the award for which they bargained.

Id. at 334 (quoting Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., Ltd., 868 F.2d 52, 58 (3d Cir. 1989)). See Office & Professional Employees Int'l Union, Local 471 v. Brownsville Gen. Hosp., 186 F.3d 326, 331-32 (3d Cir. 1999) (when award directed employee to continue a counseling relationship with a particular counselor but the counselor refused to keep

12

treating the employee, a latent ambiguity arose requiring remand).

In this case, the parties agreed that the Award was ambiguous as to whether Chellini would have to undergo a return-to-work drug test before he could be reinstated, and after some negotiating, they signed the Memorandum of Agreement, which stated that he would submit to such a test. Similarly, it is clear that the Award did not contemplate whether Chellini would be required to submit to a SAP evaluation and the issue was not discussed during the arbitration. Indeed, when First Student later raised this issue, Chellini objected to it and that led to the present dispute. Thus, the Award, although apparently clear on its face, presents a latent ambiguity when external facts, namely the DOT regulations which appear to impose additional prerequisites on Chellini's ability to be reinstated as a bus driver, are taken into consideration. Colonial Penn, 943 F.2d at 334.

Defendants' first argument in support of their motion for summary judgment is, in effect, that the Award should be enforced, so long as it is read in conjunction with the SAP evaluation requirement of the DOT regulations. Plaintiffs request that the Award be enforced without the SAP evaluation requirement. In other words, both sides are in favor of having the Award enforced, but they disagree as to how it should be implemented, that is, they rely upon competing interpretations of the Award.

The arbitrator should be given the opportunity to resolve this ambiguity upon remand.[5] Therefore, both motions for summary judgment as to the enforcement of the Award will be

---

[5] The remand will also allow First Student to elaborate for the arbitrator the consequences of reinstating Chellini without requiring him to submit to a SAP evaluation: is the matter merely theoretical (i.e., First Student would face liability only if Chellini were involved in some future accident and this history became known) or immediate (i.e., First Student risks losing its license because Chellini's refusal has already been reported and the DOT would learn that he was reinstated without having submitted to a SAP evaluation)? Defendants have not addressed this issue herein.

13

denied, and the matter will be remanded to the arbitrator for resolution of the ambiguity.

Personal Liability of Teresa Cole

In addition, Defendants move to dismiss Teresa Cole as a defendant, contending that she cannot be held personally liable for First Student's alleged failure to comply with the Award. Plaintiffs have not responded to this argument.

"The duty to submit to arbitration is of contractual origin and exists by virtue of a litigant's consent to arbitration by his entering into a collective bargaining agreement which contains an arbitration clause. When a litigant is not a party to the collective bargaining agreement, the litigant is under no duty to submit to arbitration." International Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc., 814 F. Supp. 392, 398 (D. Del. 1993) (citing John Wiley & Sons v. Livingston, 376 U.S. 543, 547 (1964)). In that case, a union filed claims, including some against Joseph Donohoe, who signed a CBA on behalf of a company and the arbitrator imposed liability on Donohoe in his individual capacity, as well as on the company. But the court held that this portion of the award had to be vacated because Donohoe was not bound by the CBA and the arbitrator had no authority over him. Id. at 403-04.

Cole is not a party to the CBA. Defendants also note that she was not involved in the drug testing of Chellini and did not make any determination in this case. Her only role in this matter, according to the Complaint, was that she communicated First Student's position that Chellini had to undergo counseling before returning to work as a driver. (Compl. ¶¶ 19-20.) As Defendants note, this allegation does not create a claim against Cole individually. Therefore, with respect to the dismissal of Cole, Defendants' motion for summary judgment will be granted.

In summary, for the reasons explained above, Defendants' motion will be granted in part

(to dismiss Teresa Cole as a defendant) and denied in all other respects, and Plaintiffs' motion will be denied. The matter will be remanded to the arbitrator for resolution of the ambiguity of whether Chellini must submit to a SAP evaluation prior to being reinstated to his position as a bus driver.

    An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORWIN SCHOOL BUS DRIVERS ASSOCIATION, et al.,<br>       Plaintiffs,<br><br>vs<br><br>FIRST STUDENT, INC., et al.,<br>       Defendants. | Civil Action No. 16-666 |

ORDER

AND NOW, this 8th day of September, 2016,

IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendants (ECF No. 12) is granted with respect to the dismissal of Teresa Cole as a defendant and denied in all other respects.

IT IS FURTHER ORDERED that the motion for summary judgment filed by Plaintiffs (ECF No. 15) is denied.

IT IS FURTHER ORDERED that this case is remanded to the arbitrator for resolution of the ambiguity of whether Chellini must submit to a SAP evaluation prior to being reinstated to his position as a bus driver.

                                                  s/Robert C. Mitchell_____
                                                  ROBERT C. MITCHELL
                                                  United States Magistrate Judge